LOUIS et al. v. BOYNTON, Atty. Gen., of Kansas, et al.

No. 636.

District Court, D. Kansas, Second Division.
Oct. 1, 1931.

472 ·

Arnold C. Todd, of Wichita, Kan., L. J. Bond, of Eldorado, Kan., James G. Norton and Carl O. Bauman, both of Wichita, Kan., for plaintiffs.

Roland Boynton and Walter T. Griffin, both of Topeka, Kan., Wint Smith, of Kansas. City, Kan., Ralph M. Hope, of Garden City, Kan., James W. Steiger and E. H. Hatcher, of Topeka, Kan., for defendants.

Before PHILLIPS, Circuit Judge, and SYMES and HOPKINS, District Judges.

PHILLIPS, Circuit Judge.

Plaintiffs are engaged in the business of operating motor transports under contract upon the Kansas highways. They filed a bill of complaint against defendants asking for a permanent injunction against the enforcement of Senate Bill 387, being chapter 236, Kansas Laws 1931, and Senate Bill 388, being chapter 244, Kansas Laws 1931. The matter was before this court on June 26, 1931, and a temporary injunction was denied as to Senate Bill 387, and allowed as to Senate Bill 388. The matter is now before this court upon defendants' motion to dismiss the bill of complaint.

We will first consider Senate Bill 387, which is chapter 236, supra. Section 1 of that act in part reads as follows:

"(a) The term 'motor vehicle' when used in this act means any automobile, automobile truck, trailer, motor bus, or any other self-propelled or motor-driven vehicle used upon any public highway of this state for the purpose of transporting persons or property.

"(b) The term 'public motor carrier of property' when used in this act shall mean any person engaged in the transportation by motor vehicle of property for hire as a common carrier having a fixed termini or route.

"(c) The term 'contract motor carrier of property' when used in this act shall be construed to mean any person not a public motor carrier of property engaged in the transportation by motor vehicle of property for hire as a business. * * *

"(f) The term 'contract motor carrier of passengers' when used in this act shall be construed to mean any person not a public motor carrier of passengers engaged in the transportation by motor vehicle of passengers or express for hire.

"(g) The term 'public highway' when used in this act shall mean every public street, road or highway or thoroughfare of any kind used by the public."

Section 2 of that act reads as follows:

"That this act shall not apply to motor carriers who shall operate wholly within any city or village of this state, or private motor carriers who operate within a radius of twenty five miles beyond the corporate limits of such city, or any village, nor to the transportation of live stock and farm products to market by the owner thereof or supplies for his own use in his own motor vehicle; or to the transportation of children to and from school."

Sections 4, 6, 7, 9 and 12 deal solely with public motor carriers, and a consideration thereof is not material to the present inquiry.

Section 5 undertakes to vest the public service commission with certain powers and duties with respect to the regulation of the various classes of carriers defined in section 1.

Section 21 requires every carrier to carry liability insurance in a reasonable sum to be determined by the commission, to protect the public and guarantee payment of loss or damage resulting from injuries to persons or property caused by the negligent operation of motor vehicles by such carriers.

Counsel for plaintiffs contend that the various classifications set up in section 2 and the exemptions provided therein are discriminatory in character and deny plaintiffs equal protection of the laws in violation of the Fourteenth Amendment; that section 5 violates their constitutional rights in that contract carriers cannot be subjected to regulation to the full extent to which the commission is authorized to impose by this section, and that the insurance provided for in section 21 is an undue interference with interstate commerce.

█ **473**

█ The highways belong to the state. It may make provisions appropriate for securing the safety and convenience of the public in the use of them. Kane v. New Jersey, 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222. And it may impose fees with a view both to raising funds to defray the cost of supervision and maintenance, and to obtaining compensation for the use of the road facilities provided. Buck v. Kuykendall, 267 U. S. 307, 314, 315, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286; Hendrick v. Maryland, 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385; Clark v. Poor, 274 U. S. 554, 47 S. Ct. 702, 71 L. Ed. 1199. The act here was passed to provide revenue for the supervision and upkeep of the highways of the state. The power to tax is essential to the existence of the government of a state, and the equal protection clause does not compel a state, in the exercise of that power, to adopt an iron rule of equal taxation. Franklin v. Carter (C. C. A. 10) 51 F.(2d) 345, and cases there cited. It may exercise a broad discretion in the classification for the purpose of taxation, but such classification must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons in similar circumstances shall be treated alike. Franklin v. Carter, supra.

█ Section 13 of the act provides for the imposition of a tax upon public motor carriers of property or passengers, contract motor carriers of property or passengers, and private motor carriers of property based upon gross ton mileage, and provides a formula for computing such ton mileage. Such formula accomplishes substantial equality and is valid.

Section 2 above quoted exempts from such tax motor carriers who operate wholly within any city or village, private motor carriers who operate within a radius of 25 miles of a city or village, private motor carriers transporting their livestock and farm products to market and supplies for their own use, and motor carriers transporting children to schools. The question is whether the classification of the exempted carriers is based upon a substantial difference having a just and reasonable relation to the object of the legislation.

Eighty per cent. or more of the tax is to be used to create a fund for reconstruction and maintenance of highways. Such fund will be entirely expended outside of the corporate limits of cities and villages. It is obvious, therefore, that motor carriers operating wholly within a city or village will not receive any direct benefit therefrom, and just reason exists for exempting them from the tax.

Private carriers make only an incidental use of the public highways and do not transport persons or property thereon for hire as a business. Because of this difference, we think all private motor carriers could properly be placed in a separate class and exempted from the tax. If this be true, there is no valid objection to an exemption of private motor carriers who operate only within a radius of 25 miles of the corporate limits of a city or village. The same is true of a person transporting his own livestock, farm products or supplies. There may be just cause for a non-exempted private carrier to object to the exemptions in section 2, but we see no grounds for objection by a carrier who transports property or passengers for hire. A public carrier uses the highways as a business and may be justly required to pay more than the ordinary tax exaction for such use. On the other hand, a private carrier makes only an incidental use of the highways and sufficiently compensates therefor by payment of the ordinary tax exactions.

A tax on public carriers engaged in transporting school children would simply be added to the cost of transportation. This is paid for by the school districts, which are instrumentalities of the state. If the tax were collected it would only be taken from one department of the state government and paid by another. This, in our opinion, affords a just ground for exempting school bus transportation from the tax.

█ Section 21 in order to be sustained as to contract and private carriers must be deemed to relate to the public safety. Smith v. Cahoon, 283 U. S. 553, 51 S. Ct. 582, 75 L. Ed. 1264, decided May 25, 1931. It has been held that a state cannot impose such a requirement for the protection of passengers or property carried by interstate carriers in interstate commerce. Liberty Highway Co. v. Michigan Pub. Utilities Commission (D. C.) 294 F. 703; Michigan Pub. Utilities Commission v. Duke, 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105. It is our opinion, however, that this section does not intend such security to protect passengers or cargoes carried, but to protect third persons from injuries to their persons or property, and to guarantee compensation therefor if such injury ensues. So construed, such requirement is valid. 42 C. J. p. 710, § 161; In re Opinion of the Justices, 81 N. H. 566, 129 A. 117, 39 A. L. R. 1023.

■ By section 2 a motor carrier that operates wholly within a city or village is exempted from the provisions of section 21. The question again arises whether this is a legitimate classification. The exempted carriers are subject to regulation by the cities or villages within which they operate, through ordinances enacted under powers delegated to them by the state. This seems to us to be a legitimate basis for the classification as to those vehicles operated wholly within the corporate limits of cities and towns.

Section 2 also exempts from the provisions of section 21 certain private motor carriers. There is a distinction between those who make an incidental use of the highways for private purposes and those who carry persons or the property of another for hire. Generally speaking, the use by the former is incidental to their principal business or vocation, while the use by the latter is continuous and habitual. It may be that a private carrier when he does use the highway is just as liable to be negligent as is the carrier for hire, but, since the use by the latter is habitual and continual, it probably affords a sufficient basis for the classification.

As to the school-bus transportation, it is to be presumed that the governing authorities of the several school districts will see to it that persons are hired who will exercise due care. This obviates the need of liability insurance in such cases.

■ Section 5 undertakes to vest the public service commission with broad powers and duties with respect to the regulation of the several carriers defined in section 1. It may be that contract carriers and private carriers are not subject to regulation to the full extent provided in this section; as, for example, regulations as to service. However, the regulations provided for thereunder have not yet been promulgated. The extent, if any, to which such regulations will invade the rights of plaintiffs is not now known. Plaintiffs cannot complain until regulations which violate their constitutional rights are threatened or actually promulgated. Therefore, the attack upon this section by plaintiffs is premature. Turpin v. Lemon, 187 U. S. 51, 60, 23 S. Ct. 20, 47 L. Ed. 70; McCabe v. A., T. & S. F. Ry. Co., 235 U. S. 151, 162, 35 S. Ct. 69, 59 L. Ed. 169; Euclid v. Ambler Realty Co., 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016.

We conclude that, while the provisions of section 5 in several respects go beyond the competency of the Legislature, plaintiffs are neither injured nor threatened to be injured at this time by reason of the provisions of such section, that their attack thereon is premature, that the exemption provisions of section 2 are based upon legitimate classifications, and that the act does not violate the equal protection clause of the federal Constitution.

■ Attack is also leveled at certain provisions of chapter 236, supra, which require the furnishing of certain reports, data, and information to the commission. This information is essential to the enforcement of the tax provisions of section 13 and in our judgment may be required of all carriers subject to such tax.

The complaint with respect to chapter 236, supra, will be dismissed.

■ Coming now to chapter 244, supra, we find that it is an act designed to promote the public safety, and to prevent the use of vehicles which, because of size, character of tires and weight, may be detrimental and injurious to the highways. That the state may make provisions appropriate for securing the safety and convenience of the public in the use of the highways was decided in Kane v. New Jersey, 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222. See, also, Buck v. Kuykendall, 267 U. S. 307, 314, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286. It has a broad discretion in classification in the exercise of its power to regulate, but the constitutional guaranty of equal protection of the laws is interposed against discriminations that are entirely arbitrary. Smith v. Cahoon, 283 U. S. 553, 51 S. Ct. 582, 75 L. Ed. 1264. This act does not resort to classification and impose certain restrictions as to safety upon common carriers, public carriers, and contract carriers for hire, who use the highways as an avenue over which to transport persons or property for hire as a business and different ones for those who use such highways only incidentally, but it imposes similar restrictions upon all users of highways except those operating private passenger automobiles and certain persons who come within the proviso of section 1. This proviso reads: "The provisions of this act shall not apply to the operation or moving of farm machinery or equipment, or the delivery of farm products to or from markets by the producer on any of the roads or highways in the state."

■ The two provisions in this exemption should be noticed separately. We do not understand the provision with reference to the operation or moving of farm machinery

or equipment to apply to the transportation of farm machinery or equipment upon motor vehicles. We think it was intended to apply to only the movement or operation of farm machinery or equipment on its own wheels. For example, a farmer who wants to move his wheat combine from one place to another along a highway. So construed, it applies to only casual and incidental uses of the highways. We think there is a substantial difference between motor driven machinery traveling on its own wheels, and farm machinery or equipment being transported by motor truck. Of course, if the act means that a man who loads his automobile truck and trailers with automobiles is subject to this law, and the man who loads a like vehicle with farm machinery is not subject to it, then the act is bad. But, giving it the narrow and restricted construction which we have indicated with respect to the operation or the movement of farm machinery or equipment, we think there is just basis for the classification and that the act does not, because of the first provision of the exemption clause, violate the provisions of the Fourteenth Amendment.

The exemption of the movement of farm products by the producer thereof presents a more serious question. As heretofore stated, the general provisions of this act, which are designed to promote the public safety, cover every conceivable use of the public highways by motor vehicles, except private passenger vehicles, whether those vehicles are used by carriers for hire, contract carriers, private carriers, or by persons who casually, or incidentally, or occasionally use the highways. Within this general provision we find one class, the farmer or the producer of farm products, by virtue of the last exemption in section 1, placed in a favored position. We are of the opinion that there is no rational basis for this classification bearing a reasonable and just relation to the objects of this legislation.

It appears to us that the producer of farm products, carrying his products to market by motor vehicle over the roads and highways of Kansas, will make just as much use of those highways as a great many of the persons who are not exempt and who fall within the broad provisions of section 1, and who make only a casual or incidental use of the highways, as does the farmer.

It has been suggested by certain of the briefs that if this exemption provision is bad we may strike down the exemption and sustain the act. In order to so hold, we would have to conclude, considering the act from its four corners and its objects and purposes, that the Legislature would have enacted it with such proviso exemption left out. We doubt that the provisions of this act justify that contention, though I may say one of my associates, Judge HOPKINS, is inclined to give it that construction.

We conclude that the exemption with respect to the movement of farm products by the producer thereof violates the equal protection clause of the federal Constitution and renders the act unconstitutional.

The injunction will be made permanent.