No. 32,263

REATHA HERNDON, *Appellee*, v. JOHN W. DANIELS, doing business as THE DANIELS MOTOR STAGES, and THE CENTRAL MUTUAL INSURANCE COMPANY, Garnishee, *Appellants*.

(44 P. 2d 207)

Opinion filed May 4, 1935.

*A. J. Herrod,* of Kansas City, for the appellants.

*Joseph Cohen* and *Norman B. Sortor,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to recover damages for an injury resulting from the negligent operation of an interstate bus. Judgment was for plaintiff. When the judgment was not paid plaintiff instituted garnishment proceedings against the company which carried the liability insurance for defendant. Judgment was entered for the plaintiff against the garnishee. From that judgment the garnishee appeals.

The defendant is an interstate common carrier operating from East St. Louis, Ill., to Kansas City, Kan. He had a permit from the public service commission of Missouri to operate as an interstate carrier of passengers through the state of Missouri. Plaintiff was injured while riding as an interstate passenger. She sued and recovered judgment against the carrier. Shortly after the judgment

was rendered defendant ceased doing business. An execution was issued against defendant and on the same day an affidavit in garnishment was filed, alleging that the Central Mutual Insurance Company was indebted to the defendant. This company had issued a liability insurance policy to defendant, in compliance with the statutes of Missouri, at the time his permit to do business was issued. The garnishee filed its answer denying any liability to the Daniels Motor Stages. Plaintiff took issue on the answer of the garnishee. Trial was had on this issue. The court held in favor of the plaintiff and gave her judgment against the garnishee. From that judgment this appeal is taken.

The question is whether or not the policy issued by the garnishee covered injuries to passengers on defendant's bus. The policy itself provided that the company would pay "any final judgment for personal injury .... to persons other than passengers." The argument of plaintiff is that the statutes of Missouri required a motor carrier to carry liability insurance which would provide compensation for injuries to persons resulting from the negligent operation of motor carriers, and that, since there is no exception to the law, it requires insurance covering passengers as well as the public generally. We will concede that if the statutes of Missouri require that the carrier furnish a policy covering injuries to passengers, the policy in this case should be given that interpretation. This sends us then to an examination of those statutes. Section 5273 of the Laws of Missouri for 1931 provides, in part, as follows:

"No certificate of convenience and necessity, or contract hauler's permit shall be issued by the public service commission until and after such carrier shall have filed with, and same has been approved by the commission of this state, a liability insurance policy or bond in some reliable insurance company or association or other insurer satisfactory to the commission and authorized to transact insurance business in this state, in such sum and upon such conditions as the commission may deem necessary to adequately protect the interests of the public in the use of the public highways and with due regard to the number of persons and amount of property transported, which liability insurance shall bind the obligors thereunder to make compensation for injuries to persons and loss of or damage to property resulting from the negligent operation of such motor carrier or contract hauler: *Provided*, That any motor carrier or contract hauler coming under the provisions of this act, who shall funish annually to the commission, and at such other times as may be required, satisfactory proof and evidence of such carrier's financial ability to properly protect the interest of the public and pay compensation for injuries to persons and loss or damage to property, on account of or arising out of negligent operation of

such carrier's business, shall not be required to furnish liability insurance policy or bond therefor: *Provided,* That subsection 'b' of section 5268 of this act, relating to liability insurance policy shall apply to interstate contract haulers. No other or additional policies, bonds or licenses than those prescribed in this act shall be required of any motor carrier to which this act applies by any city, town or other subdivision of this state: *Provided,* That this section shall not be so construed as to interfere with the right of any county, city, or other civil subdivision of this state, to levy and collect any property tax to which such motor carrier is liable under the general revenue laws of this state within such county, city, or other civil subdivision wherein the property of such motor carrier may be subject to assessment and taxation. No other or additional policies or bonds than those prescribed in this act shall be required of any contract hauler to which this act applies by any city, town or other subdivision of this state."

It will be noted that this statute required an insurance policy "in such sum and upon such conditions as the commission may deem necessary to adequately protect the interests of the public in the use of the highways and *with due regard to the number of persons and amount of property transported."* (Italics ours.)

Plaintiff directs attention to the portion italicized and urges that this language in the statute must mean that the policy was intended to apply to passengers and property being carried. That does not follow, however. There would be good cause for the commission to take into consideration whether the carrier intended to run one bus a day or to run one every hour although the policy was to cover injuries only to persons other than passengers. The carrier which operates over a line that requires a bus every hour needs a policy in a higher amount than a carrier which operates only one bus a day. It is more likely to injure some member of the public while using the roads. The theory upon which the requirement that a motor carrier may be required to carry liability insurance even though it is operating interstate, is that each state has a right to make such a requirement as a public regulation. It is within the power of the state to safeguard the use of its own highways.

The validity of such a statute has been passed on by the supreme court of the United States. The question first came before that court when attempts were made to establish that no state had power to make such a requirement. The statute of Kansas provides:

". . . No certificate . . . shall be issued . . . until and after such motor carrier shall have filed . . . a liability insurance bond . . . in such a sum as the public utilities commission may deem necessary to adequately protect the interests of the public . . . which liability insurance

shall bind the obligors thereunder to make compensation for injuries to persons . . . resulting from the negligent operation of such motor carrier." (R. S. 1933 Supp. 66-1,102.)

The supreme court, in considering an action wherein it was sought to enjoin the enforcement of that statute, said:

"First, Private motor carriers of property must obtain a license, pay a tax, and file a liability insurance policy. The public service commission has no authority to refuse a license if the described information is given with the application, the liability insurance policy is filed, and there is compliance with the regulations and payment of the license fee. Section 8. It is not shown that either regulations or license fees are unreasonable. The tax and the license fees, over the expenses of administration, go to the highway fund of the state for the maintenance and reconstruction of the highways the carrier is licensed to use. The insurance policy is to protect the interests of the public by securing compensation for injuries to persons and property from negligent operations of the carriers. Section 21. The district court approved an earlier decision, also by a district court of three judges, that this provision was not intended to require 'security for passengers or cargoes carried, but only to protect third persons from injuries to their persons or property.' 55 F. 2d, at page 357; *Louis v. Boynton,* (D. C.) 53 F. 2d 471, 473. This is an admissible construction, and no different application of the provision appears to have been made by either the state court or the commission. . . ." (*Continental Baking Co. v. Woodring,* 52 Sup. Ct. Rep. 595, 286 U. S. 352.)

It will be noted that the court in that opinion referred to the opinion in the case of *Louis v. Boynton,* 53 F. 2d 471. The court upheld the insurance requirement because it had been held in the Louis case that the statute did not require a policy that would cover passengers. A requirement compelling interstate motor carriers to carry a liability policy that would cover passengers would be invalid. The result is that a holding that the statute under consideration makes such a requirement would amount to a decision that the statute was invalid. When a statute is being construed it should be given the construction which will cause it to be valid. We will do that in this case. When so construed, the Missouri statute does not require motor carriers to have a policy that will cover interstate passengers.

The judgment of the trial court is therefore reversed with directions to enter judgment for the garnishee.