O'GORMAN AND YOUNG, INCORPORATED, *v.* HARTFORD FIRE INSURANCE COMPANY.

SAME *v.* PHOENIX ASSURANCE COMPANY, LIMITED.

Nos. 12 and 13. Argued April 30, 1930. Reargued October 30, 1930.—Decided January 5, 1931.

252

See also 105 N. J. L. 645.

*Mr. Walter Gordon Merritt,* with whom *Mr. George C. Austin* was on the brief, for appellant.

*Mr. Ralph E. Lum* for appellees.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

These cases, which are here on appeals from the highest court of New Jersey, were argued together. They present the question whether the following statutory provision,

effective March 29, 1928, is consistent with the due process clause of the Fourteenth Amendment:

" In order that rates of insurance against the hazards of fire shall be reasonable it shall be unlawful for any such insurer licensed in this State to . . allow . . any commission . . in excess of a reasonable amount, to any person for acting as its agent in respect to any class of such insurance, nor . . to allow . . any commission . . to any person for acting as its local agent in respect to any class of such insurance, in excess of that . . . allowed to any one of its local agents on such risks in this State." (New Jersey Laws 1928, c. 128, p. 258.)

In each case, O'Gorman and Young, Inc., a domestic corporation licensed as an insurance broker, sues a licensed foreign fire insurance company to recover a balance alleged to be due for services performed as local agent at Newark after the effective date of the statute. In the *Phoenix Assurance Company* case, the complaint is on a contract terminable at will, made prior to the enactment of the statute, by which the company agreed to pay to the agent twenty-five per cent. of the premiums. In the *Hartford Fire Insurance Company* case, the complaint is on a contract, made after the enactment of the statute, by which the defendant agreed to pay as compensation " what such services were reasonably worth "; and the complaint alleges that the services were reasonably worth twenty-five per cent. of the premiums. Each complaint alleges that the defendant has paid the plaintiff only twenty per cent. of the premiums. Each answer admits the facts alleged in the complaint. As a defense, it sets up the statute and the fact that the defendant had at the date of its enactment, and ever since has had, several persons acting as its local agents within the State to whom the compensation allowed in respect to the same class of business has been only twenty per cent. of the premiums.

Each case was heard upon a motion to strike out the answer and for judgment on the ground that the statute is void under the due process clause of the Fourteenth Amendment. In each case the trial court denied the motion and entered judgment against the plaintiff, the facts alleged in the answer being admitted. In an opinion discussing the question presented, that court said:

" Our statute provides that the rates for fire insurance 'shall be reasonable.' Since the commissions paid to local agents naturally enter into the cost of such insurance to the public, and therefore influence the rates which must be charged to the public for such insurance, it is within the police power of the state to require that the commissions must be reasonable, otherwise such large commissions might be allowed as to impair the financial stability of the insurance companies, and thus imperil their ability to meet their financial obligations to their policy holders.

" Since twenty per cent. is the amount of commissions paid to some of its local agents, the effect of this legislation is to determine that a commission in excess of that is unreasonable. The presumption is in favor of the reasonableness of the law until the contrary is made to appear.

" In the facts or argument, there is nothing to overcome that presumption. . . ." 105 N. J. L. 645.[1]

---

[1] It is the settled practice in New Jersey that where the subject regulated is properly within the scope of the police power of the State, a charge of discrimination or lack of reasonable relation between the object of the act and the means employed, must be supported by facts in the record sufficient to overcome the general presumption of constitutionality. *Hopper* v. *Stack*, 69 N. J. L. 562; *Meehan* v. *Board of Excise Commissioners*, 75 N. J. L. 557, 562; *Commercial Trust Co.* v. *Hudson County Board*, 86 N. J. L. 424, affirmed, 87 N. J. L. 179; *State* v. *Sutton*, 83 N. J. L. 46, 49, affirmed, 87 N. J. L. 192, 193, affirmed, 244 U. S. 258; *Public Service Ry. Co.* v. *Public Utility Commissioners*, 89 N. J. L. 24, 27, 28, affirmed, 254 U. S. 394; compare *Thorne* v. *Town of Kearny*, 100 N. J. L. 228, affirmed sub. nom. *Thorne* v. *Casale*, 101 N. J. L. 418.

On that opinion the Court of Errors and Appeals affirmed the judgments of the trial court. 105 N. J. L. 642. We think it was right in so doing.

The business of insurance is so far affected with a public interest that the State may regulate the rates, *German Alliance Insurance Co.* v. *Lewis*, 233 U. S. 389; and likewise the relations of those engaged in the business, *La Tourette* v. *McMaster*, 248 U. S. 465; *Stipcich* v. *Metropolitan Life Insurance Co.*, 277 U. S. 311, 320. Compare *McCarter* v. *Firemen's Insurance Co.*, 74 N. J. Eq. 372, 382. The agent's compensation, being a percentage of the premium, bears a direct relation to the rate charged the insured. The percentage commonly allowed is so large that it is a vital element in the rate structure and may seriously affect the adequacy of the rate. Excessive commissions may result in an unreasonably high rate level or in impairment of the financial stability of the insurer. It was stated at the bar that the commission on some classes of insurance is as high as thirty-five per cent. Moreover, lack of a uniform scale of commissions allowed local agents for the same service may encourage unfair discrimination among policy holders by facilitating the forbidden practice of rebating. In the field of life insurance, such evils led long ago to legislative limitation of agents' commissions.[2]

The statute here questioned deals with a subject clearly within the scope of the police power. We are asked to declare it void on the ground that the specific method of regulation prescribed is unreasonable and hence deprives the plaintiff of due process of law. As underlying questions of fact may condition the constitutionality of legislation of this character, the presumption of constitutional-

[2] Laws of New York, 1906, c. 326, § 97, pp. 794–797; Insurance Law of New York (Baldwin), 1930 Edition, § 97, pp. 96–101. See Report of Joint (Armstrong) Insurance Investigating Committee, Feb. 22, 1906, pp. 399–417; Laws of New Jersey, 1927, c. 167, pp. 324, 325; 1928, c. 128, p. 257.

ity must prevail in the absence of some factual foundation of record for overthrowing the statute.[3] It does not appear upon the face of the statute, or from any facts of which the court must take judicial notice, that in New Jersey evils did not exist in the business of fire insurance for which this statutory provision was an appropriate remedy. The action of the legislature and of the highest court of the State indicates that such evils did exist.[4] The record is barren of any allegation of fact tending to show unreasonableness.

*Affirmed.*

Separate opinion of MR. JUSTICE VAN DEVANTER, MR. JUSTICE MCREYNOLDS, MR. JUSTICE SUTHERLAND and MR. JUSTICE BUTLER.

We are of opinion that the judgments below should be reversed.

The Appellees (defendants below) are separate fire insurance companies. The facts are not in dispute; both.

[3] *Close* v. *Glenwood Cemetery*, 107 U. S. 466, 475; *Powell* v. *Pennsylvania*, 127 U. S. 678, 685; *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 79, 83; *Chicago Dock Co.* v. *Fraley*, 228 U. S. 680, 687; *Rast* v. *Van Deman & Lewis Co.*, 240 U. S. 342, 357; *Wampler* v. *Lecompte, ante*, p. 172. Compare *Minnesota Rate Cases*, 230 U. S. 352, 461; Henry Wolf Biklé, "Judicial determination of facts affecting the constitutional validity of legislative action." 38 Harv. L. Rev. 6.

[4] Compare *Heath & Mulligan Mfg. Co.* v. *Worst*, 207 U. S. 338, 355; *Welch* v. *Swasey*, 214 U. S. 91, 108; *Laurel Hill Cemetery* v. *San Francisco*, 216 U. S. 358, 365; *Adams* v. *Milwaukee*, 228 U. S. 572, 583; *Barrett* v. *Indiana*, 229 U. S. 26, 29; *Patsone* v. *Pennsylvania*, 232 U. S. 138, 144; *Price* v. *Illinois*, 238 U. S. 446, 452; *Bunting* v. *Oregon*, 243 U. S. 426, 438; *Dominion Hotel* v. *Arizona*, 249 U. S. 265, 268. The alleged existence of such evils throughout the United States led recently to an enquiry by the National Convention of Insurance Commissioners. See report of proceedings at annual meeting Sept. 9, 1930. The United States Daily, Supplement, Sept. 23, 1930.

records present like circumstances and questions of law. It will suffice here to point out the essentials disclosed in No. 12.

O'Gorman and Young, a New Jersey corporation, under proper license transacts business as an insurance broker. For many years it has been the agent of appellee, a Connecticut corporation authorized to issue fire policies in New Jersey. Prior to March 29, 1928, the agreement of employment provided that for negotiating and selling such policies the agent should receive 25% of prescribed premiums. On that day the original contract was changed and now it provides that the agent shall be paid "what such services were reasonably worth."

Acting under this modified arrangement, O'Gorman and Young negotiated and sold policies upon which the premiums amounted to $2,454.61. As reasonable compensation, demand was made for $613.68—25% of the premiums. The Insurance Company paid $490.92, 20%, and denied further liability.

Thereupon (October, 1928), asserting that its services were reasonably worth 25% of the premiums, O'Gorman and Young brought an action against the Insurance Company in the Circuit Court, Essex County, New Jersey, to recover $122.76. The complaint sets out the foregoing facts and asks for judgment; it says nothing concerning any New Jersey statute.

The answer admits the allegations of the complaint except "defendant denies that it owes the plaintiff the sum of $122.76 as in said complaint alleged for the reasons hereinafter in this answer set forth." They are set out in the three paragraphs immediately below.

Chapter 128*, Act of the New Jersey Legislature approved March 29, 1928, provides (Section 1)—"In order

---

* CHAPTER 128.

An Act to amend an act entitled "A further supplement to an act entitled 'An act to provide for the regulation and incorporation of

that rates for insurance against the hazards of fire shall
be reasonable it shall be unlawful for any such insurer
licensed in this State to directly or indirectly pay or allow,
or offer or agree to allow, any commission or other com-

---

insurance companies and to regulate the transaction of insurance
business in this State,' approved April third, one thousand nine hun-
dred and two," which said supplement was approved March eight-
eenth, one thousand nine hundred and thirteen.

BE IT ENACTED *by the Senate and General Assembly of the State of
New Jersey:*

1. Section one of the act of which this act is amendatory be and
the same is hereby amended so that the same shall read as follows:

1. No corporation, firm, association, individual or aggregation of
individuals, hereinafter called "insurer," doing the business of insur-
ance within this State shall fix or make any rate or schedule of rates,
or charge, demand, collect or receive, directly or indirectly, or through
any special rate, tariff, drawback, rebate, concession, device or sub-
terfuge, a rate for insurance, which discriminates unfairly between
risks within this State of essentially the same hazard, nor shall any
insurer against the hazards of fire or legal liability of employers make
any such insurance within this State except in accordance with gen-
eral basis schedules, embodying basis rates, charges, credits, terms,
conditions, permits, standards and other data necessary to the compu-
tation of equitable rates and rules of practice for such insurance,
which general basis schedules, embodying basis rates, charges, credits,
terms, conditions, permits, standards and other data used for the
determination of rates shall be filed by such insurer or its agent or
expert duly authorized, with the Commissioner of Banking and In-
surance within three months after this act goes into effect, or with
the amendments to such general basis schedules which may be filed
with the Commissioner of Banking and Insurance from time to time
thereafter. Any one or more of such insurers singly or jointly may
employ for the making of such general basis schedules and rates and
the filing of the same the services of such experts as it, or they, may
deem advisable for such purpose. In order that rates for insurance
against the hazards of fire shall be reasonable it shall be unlawful
for any such insurer licensed in this State to directly or indirectly
pay or allow, or offer or agree to allow, any commission or other
compensation or anything of value, in excess of a reasonable amount,
to any person for acting as its agent in respect to any class of such
insurance, nor to directly or indirectly pay or allow, or offer or agree

pensation or anything of value, in excess of a reasonable amount, to any person for acting as its agent in respect to any class of such insurance, nor to directly or indirectly pay or allow, or offer or agree to allow, any commission or

to allow, any commission or other compensation or anything of value, to any person for acting as its local agent in respect to any class of such insurance, in excess of that offered, paid or allowed to any one of its local agents on such risks in this State. On the written complaint of any insurer or any agent licensed in this State, that there has been any violation of the provisions of this act, or when the commissioner deems it necessary without such complaint, the commissioner shall inquire whether or not there has been any violation of the provisions of this act in the commissions paid or payable on such risks in this State.

Every such insurer or agent shall, within ten days after written demand therefor, furnish to any person, upon whose property or risk a rate has been made by said insurer, or to his authorized representative, full information as to such rate, and if such property or risk be rated by schedule applying particularly to each risk, a copy of such schedule, and shall provide such means as may be approved by the Commissioner of Banking and Insurance whereby any person or persons affected by such rate may be heard on an application for a change in such rate. Whenever it is made to appear to the satisfaction of the Commissioner of Banking and Insurance that any such rate or general basis schedule or amendment thereof discriminates unfairly between risks within this State of essentially the same hazard or that any insurer has made any insurance within this State at any rate not in accordance with the general basis schedule or amendment thereof filed by it, he may, after a full hearing, either before himself or before any salaried employee of the Department of Banking and Insurance whose report he may adopt, order such discrimination removed, or such rate corrected in accordance with such general basis schedule or amendment thereof; and all such insurers affected thereby shall forthwith comply with such order; nor shall such insurers or any of them remove such discrimination by increasing the rates on any risk or class of risks affected by such order unless it is made to appear to the satisfaction of the Commissioner of Banking and Insurance that such increase is justifiable.

This supplement shall not apply to any contract of life insurance, nor to any contract of insurance upon or in connection with marine or transportation risks or hazards other than contracts for automo-

other compensation or anything of value, to any person for acting as its local agent in respect to any class of such insurance, in excess of that offered, paid or allowed to any one of its local agents on such risks in this State."

Also (section 2)—"Any insurer, agent, expert, person or corporation violating any of the provisions of this act shall be subject to a penalty of five hundred dollars for each and every violation to be sued for and recovered by the Commissioner of Banking and Insurance, or by any citizen of this State and paid to the State Treasurer. In case any insurer is convicted of a violation of this act, every local agent of the insurer in this State shall be

---

bile insurance, nor to contracts of insurance upon property or risks located without this State, nor to contracts of title insurance or mortgage guaranty.

2. Section two of the act of which this act is amendatory be and the same is hereby amended so that the same shall read as follows:

2. Any insurer, agent, expert, person or corporation violating any of the provisions of this act shall be subject to a penalty of five hundred dollars for each and every violation to be sued for and recovered by the Commissioner of Banking and Insurance, or by any citizen of this State and paid to the State Treasurer. In case any insurer is convicted of a violation of this act, every local agent of the insurer in this State shall be entitled to the same commission or compensation, or other thing of value, for business done for the insurer during the calendar year in which the discrimination took place, on risks in this State, and any local agent may recover from the insurer in any court of competent jurisdiction, the amount of such excess commission or compensation, or other thing of value, if any, to which he may become entitled under the provisions of this act.

If any section, provisions or part of this act be questioned in any court of competent jurisdiction, and declared to be unconstitutional, the said section, clause or part shall be exscinded and the remainder of the act shall continue in full force and effect.

3. This act shall take effect immediately.

Passed March 29, 1928.

entitled to the same commission or compensation, or other thing of value, for business done for the insurer during the calendar year in which the discrimination took place, on risks in this State, and any local agent may recover from the insurer in any court of competent jurisdiction, the amount of such excess commission or compensation, or other thing of value, if any, to which he may become entitled under the provisions of this Act."

" On and subsequently to March 29, 1928, this defendant had and now has several persons acting as its local agents duly authorized to represent it in writing fire insurance in the State of New Jersey; that the commission allowed by this defendant to its said several agents so acting as aforesaid in respect to the class of insurance mentioned in the said complaint was, on said last mentioned day and from thence hitherto and now is, twenty per centum on each premium charged; that pursuant to the terms of the said statute it became and was unlawful on and after March 29, 1928, to pay to the plaintiff herein the commission of twenty-five per centum of the premium charged, theretofore paid by this defendant to the said plaintiff."

Admitting that since March 29, 1928, a commission of 20% had been regularly allowed by the Insurance Company to certain agents in New Jersey and asserting the invalidity of the Act of that date because of conflict with the Fourteenth Amendment, complainant moved to strike out the answer as insufficient. This motion was denied and final judgment went for the defendant upon the pleadings and admission.

The Circuit Court (Judge Dungan) said—

" The other question is whether or not the act deprives the plaintiff of its property without due process of law, and therefore is a violation of the 14th Amendment to the Federal Constitution.

" Federal and State laws are in favor of the regulation of the business affairs of persons and corporations which affect the public interest, and there are federal and state decisions in almost every state in this country upholding the constitutionality of such laws, provided they are reasonable. Of course the mere statement in the law itself as to the reasonableness of its provisions does not make them so, but that is a question to be decided sometimes by the Court and sometimes by a jury. Whether or not the business of a fire insurance company is affected with a public interest is not an open question in this state. In *McCarter, Attorney General* v. *Firemen's Ins. Co.*, 74 N. J. Eq. 372 (at p. 383), our Court of Errors and Appeals said, 'The business of the defendants [insurance companies] is in point of fact one that directly affects the interests of the public, and such public interest has been recognized as a subsisting one by the Legislature of this State, and that in point of law, the business of the defendants is affected with a public interest.'

" If the regulations prescribed are reasonable, they are valid. Our statute provides that the rates for fire insurance ' shall be reasonable.' Since the commissions paid to local agents naturally enter into the cost of such insurance to the public, and therefore influence the rates which must be charged to the public for such insurance, it is within the police power of the State to require that the commissions must be reasonable, otherwise such large commissions might be allowed as to impair the financial stability of the insurance companies, and thus imperil their ability to meet their financial obligations to their policy holders.

" Since twenty per cent. is the amount of commissions paid to some of its local agents, the effect of this legislation is to determine that a commission in excess of that is

unreasonable. The presumption is in favor of the reasonableness of the law until the contrary is made to appear.

"In the facts or arguments, tnere is nothing to overcome that presumption, and therefore the answers should not be stricken out as an unlawful deprivation of the plaintiff of his property without due process of law."

The Court of Errors and Appeals affirmed the questioned judgment "for the reasons expressed in the opinion by Judge Dungan in the Circuit Court."

The matter for our consideration comes to this: A foreign insurance Company, licensed to operate in New Jersey, employed an agent and agreed to pay reasonable compensation. The agent demanded 25% of the premiums collected. The Company paid 20% of these and successfully resisted the claim for more upon the sole ground that "since twenty per cent. is the amount of commissions paid to some of its local agents, the effect of this legislation [Act March 29, 1928] is to determine that a commission in excess of that is unreasonable." Abstractly stated, the principal paid "A" commissions at the rate of 20%; therefore, it has been held, solely because of the Act nothing above 20% can be recovered by "B," who claims under a contract fair on its face and not expressly inhibited, which definitely provides for reasor ~ble compensation.

It cannot rightly be said that the burden of establishing any underlying disputable fact rests upon the appellant before it can successfully challenge the validity of the questioned enactment. This is not a proceeding to enjoin enforcement of a statute because of alleged discrimination or other circumstance, the existence of which requires consideration of facts not known to the court. Opinions in cases of that character are not in point. The court below

ruled, in effect, that without regard to any evidence which might be presented, the complainant, although relying upon a contract fair upon its face, could recover nothing above the rate allowed to another agent—that the statute restricted the right to contract for services for reasonable compensation. And we must determine whether, thus construed, and in the absence of any emergency, the statute necessarily conflicts with the Fourteenth Amendment. Is such legislation permissible in the ordinary circumstances of which the court must take judicial notice?

Under *German Alliance Ins. Co.* v. *Lewis*, 233 U. S. 389, the appellant does not deny that because of the public interest involved reasonable rates for issuing fire insurance policies may be fixed by statute. But that decision "marks the extreme limit to which this court has thus far gone in sustaining price-fixing legislation." *Tyson & Bro.* v. *Banton*, 273 U. S. 418, 434.

The German Alliance Company questioned the validity of an order by the Superintendent of Insurance of Kansas which undertook to reduce its duly announced basic schedule of rates. The definite point for decision was thus stated: "Whether a contract of fire insurance is private and as such has constitutional immunity from regulation. Or, to state it differently and to express an antithetical proposition, is the business of insurance so far affected with a public interest as to justify legislative regulation of its rates? And we mean a broad and definite public interest." An affirmative answer followed.

The decision is authoritative as to the point so ruled, but not otherwise. Nothing there determined would permit regulation of all the undertakings of an insurance company. Here we are not dealing directly with a contract to insure. And certainly it does not follow that because the State has power to regulate the rate for insur-

ance she may control every agreement having any possible relation thereto.

The public has no direct, immediate interest in the agency contract here set up. Its concern is with rates. Like any other expense item, brokers' commissions may ultimately affect the rate charged for policies; but this is true of the wages of office boys, printers, bookkeepers, actuaries, officers; the price paid for pens, ink, or other supplies—indeed whatever expense may be incurred. Broadly speaking, the funds of an insurance company come from premiums collected; and necessarily all disbursements are made therefrom and, therefore, in some sense may be said to affect the necessary rate of charge.

The State may not permit a foreign Insurance Company to do business within her limits upon condition that it shall submit to deprivation of rights guaranteed by the Constitution. *Western Union Tel. Co.* v. *Kansas,* 216 U. S. 1; *Hanover Ins. Co.* v. *Harding,* 272 U. S. 494, 508.

This Court has steadfastly upheld the general right to enter into private contract and has definitely disapproved attempts to fix prices by legislative fiat. " Freedom of contract is, nevertheless, the general rule and restraint the exception; and the exercise of legislative authority to abridge it can be justified only by the existence of exceptional circumstances." " That the right to contract about one's affairs is a part of the liberty of the individual protected by this clause, [of the Fourteenth Amendment] is settled by the decisions of this court and is no longer open to question." *Adkins* v. *Children's Hospital,* 261 U. S. 525, 545, 546. *Adair* v. *United States,* 208 U. S. 161, 174, 175; *Coppage* v. *Kansas,* 236 U. S. 1, 14; *Wilson* v. *New,* 243 U. S. 332; *Adams* v. *Tanner,* 244 U. S. 590; *Truax* v. *Corrigan,* 257 U. S. 312, 338; *Meyer* v. *Nebraska,* 262 U. S. 390; *Wolff Co.* v. *Industrial Court,* 262 U. S.

522; *Tyson & Bro.* v. *Banton, supra; Ribnik* v. *McBride,* 277 U. S. 350; *Liggett Co.* v. *Baldridge,* 278 U. S. 105, 111.

Also it must be accepted as settled that the right to regulate a business does not necessarily imply power to fix the scale for services therein, or to trespass on the duties of private management. *Adams* v. *Tanner, supra; Truax* v. *Corrigan, supra; Tyson & Bro.* v. *Banton, supra; Southwestern Bell Tel. Co.* v. *Public Service Commission,* 262 U. S. 276, 289; *Wolff Co.* v. *Industrial Court; supra.*

Even if it be admitted that the power of the legislature to establish reasonable rates for insurance necessarily presupposes existence of the right to command or inhibit what is essential to the accomplishment of that end, certainly this implied right extends to nothing which does not clearly appear to be necessary for such purpose.

The statute under review does not prescribe a schedule of rates or point out the basis for determination of reasonable rates; it leaves with each company the primary right and duty of deciding upon rates to be demanded. But it inhibits payment to any agent, irrespective of the worth of his services and without regard to any contract with him, of anything in excess of what may be actually paid to another agent. As construed, it declares that the smallest compensation voluntarily paid to any agent shall thereby become reasonable for every other agent. And it permits an agent who has been paid according to his agreement to recover more if he can show that some other agent has received greater compensation.

The objections to the statute, no extraordinary conditions having been disclosed by the defendant, should be obvious. It goes far beyond the mere regulation of the business of insurance and interferes directly with the right of insurers to control the conduct of their internal affairs; it restricts the right of both company and agent to make reasonable private agreements in respect of com-

pensation for ordinary services; and the restrictions have no immediate or necessary relation to the maintenance of insurance rates fair to the public.

The difference between regulation and management is pointed out in the cases cited above. Congress has power, for example, to regulate interstate commerce; but generally, at least, it may not say what shall be paid to employees or interfere with the freedom of the parties to contract in respect of wages. This was distinctly pointed out in Wilson v. New, 243 U. S. 332, 347—"It is also equally true that as the right to fix by agreement between the carrier and its employees a standard of wages to control their relations is primarily private, the establishment and giving effect to such agreed on standard·is not subject to be controlled or prevented by public authority."

In order to justify the denial of the right to make private contracts, some special circumstances sufficient to indicate the necessity therefor must be shown by the party relying upon the denial. Here the right freely to agree upon reasonable compensation has been abridged; and no special circumstances demanding such action have been disclosed. Under the construction placed upon the statute, no agent can make an enforcible agreement with an insurance company definitely fixing his compensation. Always the company can defeat his claim for the agreed amount, reasonable in fact, by paying less to another agent.

The inability of the company to make enforcible agreements with necessary agents has no appreciable relation to fair rates. One agent's efforts often produce much more valuable results than those of another. Such interference with the freedom of the parties hinders the proper conduct of the business and may ultimately cause increased rates. The statute prescribes no definite rate of compensation; under it no two companies are required to pay

at the same rate for like services in the same locality; and competition for business is necessarily abridged. And in order to operate at all at some points, the insurer may find it necessary to pay agents much more than prudent management would require, and beyond the real value of their services at such places.

Although agents are usually paid a specified percentage of premiums collected, the statute is not limited to that situation. Certainly we cannot say that exercise by the companies of the ordinary right freely to contract touching compensation for services will tend materially to interfere with reasonable rates for insurance. Rates constitute the matter of public concern, not the compensation of employees or representatives, which is, after all, only an item of expense. And, so far as we can see, this legislation will afford no protection to those who wish to insure.

The statute before us goes far beyond the usual provisions of state laws concerning the insurance business. We are advised that a similar one was enacted by the State of Mississippi in 1924 and by the State of Louisiana in 1926. Diligent counsel have disclosed no others. The restrictions are novel and lack the sanction of general assent and practical experience.

In our view the statute is arbitrary, unreasonable and beyond the power of the legislature.