**BOARD OF TRADE OF KANSAS CITY, MO., et al. v. MILLIGAN, U. S. Atty., et al.**

**No. 10780.**

Circuit Court of Appeals, Eighth Circuit.

June 24, 1937.

856

E. R. Morrison, of Kansas City, Mo. (Douglas Stripp, of Kansas City, Mo., on the brief), for appellants.

Wendell Berge, Sp. Asst. to the Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., Maurice M. Milligan, U. S. Atty., of Kansas City, Mo., and Kenneth L. Kimble, Sp. Atty., of Washington, D. C., on the brief), for appellees.

Before STONE, GARDNER, and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a final judgment, dismissing for want of equity a bill of complaint filed by appellants as plaintiffs below after the plaintiffs had declined to plead further. The bill of complaint challenges the constitutional validity of the various provisions of the act of Congress known as the Commodity Exchange Act (7 U.S.C.A. § 1 et seq.). For conven-

ience, the parties will be referred to as they were designated below.

Plaintiffs comprise the Board of Trade of Kansas City, Mo., its officers and directors, individual members of the Board of Trade, and firms represented by members and entitled by reason of such representation to membership privileges. The individual members and firms are engaged in handling grain and grain futures transactions as commission merchants or floor brokers or both. They filed this suit on behalf of themselves and all others similarly situated, naming as defendants the United States District Attorney for the Western District of Missouri, the supervisor in charge of the Commodity Exchange Administration of the Department of Agriculture at Kansas City, Mo., the Secretary of Agriculture, the Secretary of Commerce, and the United States Attorney General, the last three mentioned constituting the Commodity Exchange Commission under the challenged act. The purpose of the suit was to enjoin the enforcement of the various provisions of the act, and to secure a declaratory judgment upon the controversy said to be existing between the parties. The Secretary of Agriculture, the Secretary of Commerce, and the Attorney General entered special appearance in the lower court and moved to quash the subpoenas and the return of service for want of jurisdiction over their persons. The court sustained this motion and quashed the service. The bill contains proper jurisdictional averments.

■ The bill of complaint attacks the act as a whole on the ground that it does not come within the commerce power of Congress, and it also attacks various specific provisions which were added by the act of June 15, 1936.

On this appeal, plaintiffs present the issues under eleven headings. Of the eleven headings presented, five are of a general nature and are directed against the act as a whole, on the ground that Congress was without power under the commerce clause of the Constitution to regulate dealings in futures on grain exchanges. The others go to specific provisions of the act.

The argument in support of the contention that Congress was without power to regulate dealings in futures on grain exchanges finds conclusive answer in the decision of the Supreme Court in Board of Trade of City of Chicago v. Olsen, 262 U.

S. 1, 43 S.Ct. 470, 477, 67 L.Ed. 839, Bartlett Frazier Co. v. Hyde (C.C.A.7) 65 F. (2d) 350, and Board of Trade of City of Chicago v. Wallace (C.C.A.7) 67 F.(2d) 402.

In Board of Trade of City of Chicago v. Olsen, supra, the general features, purpose, and effect of the act are reviewed and considered. The present act, which is amendatory of the Grain Futures Act (7 U.S.C.A. § 1 et seq.), is of the same general character as that directed to the same general purpose; to wit, to remove burdens on interstate commerce caused by manipulation and market control. A discussion of this question would now seem to be an act of supererogation, and plaintiffs' contention in this regard cannot be sustained.

■ In considering the question of the constitutional validity of the particular provisions assailed, it is to be borne in mind that much depends upon their relation to interstate commerce, and, in turn, such relationship is to some extent at least dependent upon factual situations, so that, in the absence of some factual foundation in the record to the contrary, the presumption of constitutionality must prevail. O'-Gorman & Young v. Hartford Fire Ins. Co., 282 U.S. 251, 51 S.Ct. 130, 132, 75 L. Ed. 324, 72 A.L.R. 1163; Metropolitan Casualty Ins. Co. v. Brownell, 294 U.S. 580, 55 S.Ct. 538, 79 L.Ed. 1070.

■ Among the provisions challenged are sections 4b and 4c (7 U.S.C.A. §§ 6b, 6c). Section 4b makes it "unlawful for any member of a contract market, or for any correspondent, agent, or employee of any member, in or in connection with any order to make, or the making of (1) any contract of sale of any commodity in interstate commerce, or (2) any contract of sale of any commodity for future delivery made, or to be made, on or subject to the rules of any contract market for or on behalf of any person if such contract for future delivery is or may be used for (a) hedging any transaction in interstate commerce in such commodity or the products or by-products thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof—

"(A) to cheat or defraud or attempt to cheat or defraud such person;

"(B) willfully to make or cause to be made to such person any false report or statement thereof, or willfully to enter or cause to be entered for such person any false record thereof;

"(C) willfully to deceive or attempt to deceive such person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such person; or

"(D) to bucket such order, or to fill such order by offset against the order or orders of any other person, or willfully and knowingly and without the prior consent of such person to become the buyer in respect to any selling order of such person, or become the seller in respect to any buying order of such person."

Section 4c provides that it shall be "unlawful for any person to offer to enter into, enter into, or confirm the execution of, any transaction involving any commodity, which is or may be used for (1) hedging any transaction in interstate commerce in such commodity or the products or byproducts thereof, or (2) determining the price basis of any such transaction in interstate commerce in such commodity, or (3) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof—

"(A) if such transaction is, is of the character of, or is commonly known to the trade as, a 'wash sale,' 'cross trade,' or 'accommodation trade,' or is a fictitious sale;

"(B) if such transaction is, is of the character of, or is commonly known to the trade as, a 'privilege,' 'indemnity,' 'bid,' 'offer,' 'put,' 'call,' 'advance guaranty,' or 'decline guaranty,' or

"(C) if such transaction is used to cause any price to be reported, registered, or recorded which is not a true and bona fide price."

Plaintiffs concede that dishonest and unfair practices are to be condemned, but deny power in the federal government to protect against or prohibit such practices because, it is argued, the transactions are intrastate in character. So far as this suit involves a broad attack upon the constitutionality of the act, it is sufficient to observe that the express intent of the act is to reach interstate commerce alone. It is asserted that the use of the words "is or

may be used" indicates that transactions intrastate in character may be included. In Board of Trade of City of Chicago v. Olsen, supra, in quoting from Stafford v. Wallace, 258 U.S. 495, 521, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229, it is said: "Whatever amounts to more or less constant practice, and threatens to obstruct or unduly to burden the freedom of interstate commerce is within the regulatory power of Congress under the commerce clause, and it is primarily for Congress to consider and decide the fact of the danger and to meet it. This court will certainly not substitute its judgment for that of Congress in such a matter unless the relation of the subject to interstate commerce and its effect upon it are clearly nonexistent."

In the Olsen Case, the court made reference to United States v. Ferger, 250 U.S. 199, 39 S.Ct. 445, 63 L.Ed. 936, as a supporting authority. That case involves the validity of an act of Congress punishing the forgery or alteration of bills of exchange used in interstate commerce. The court rejected the contention that Congress was without power to punish a fraud where there was no actual interstate commerce, and held that interstate commerce would be directly impaired and weakened by the unrestrained right to fabricate and circulate spurious bills of lading, apparently connected with such commerce. In the Olsen Case, the court considered certain practices, and concluded that they discouraged normal interstate commerce. " * * * the presumption of constitutionality must prevail in the absence of some factual foundation of record for overthrowing the statute." O'Gorman & Young v. Hartford Ins. Co., supra.

We defer for later consideration the contention made by plaintiffs with reference to the threat of certain of the defendants to institute criminal prosecutions for alleged violation of section 4c (B) of the act (7 U.S.C.A. § 6c (B).

Section 4d (2) of the act (7 U.S.C. A. § 6d (2) provides that a futures commission merchant shall, "whether a member or nonmember of a contract market, treat and deal with all money, securities, and property received by such person to margin, guarantee, or secure the trades or contracts of any customer of such person, or accruing to such customer as the result of such trades or contracts, as belonging to

such customer. Such money, securities, and property shall be separately accounted for and shall not be commingled with the funds of such commission merchant or be used to margin or guarantee the trades or contracts, or to secure or extend the credit, of any customer or person other than the one for whom the same are held: * * * Provided further, That such money may be invested in obligations of the United States, in general obligations of any State or of any political subdivision thereof, in obligations fully guaranteed as to principal and interest by the United States, and in 'investment securities' as defined in and under authority of Section 5136 of the Revised Statutes, as amended [section 24 of title 12] and, subject to approval by the Secretary of Agriculture, may be loaned on the security of negotiable warehouse receipts conveying or securing title to readily marketable commodities to the extent of the current loan value of such receipts, such investments and loans to be made in accordance with such rules and regulations and subject to such conditions as the Secretary of Agriculture may prescribe."

It is urged that this regulation is not within the power of Congress under the Constitution. The regulation, however, appears to have a direct relation to interstate commerce. It may well stimulate a confidence in customers of the commission merchant that their money will not be lost through improper use. By preventing improper uses, speculation and the abnormal consequences resulting therefrom will be diminished, if not prevented. Freedom of contract, in its proper sense, is not abrogated by this provision. United States v. Donahue Bros., Inc. (C.C.A.8) 59 F.(2d) 1019; Chicago, B. & Q. R. Co. v. McGuire, 219 U.S. 549, 31 S.Ct. 259, 55 L. Ed. 328.

■ Sections 4d (1), 4e, 4f, and 4g of the act (7 U.S.C.A. §§ 6d (1), 6e, 6f, 6g) may be considered as a group. Sections 4d (1) and 4e make it unlawful for commission merchants or brokers to engage in the handling of futures unless registered. Section 4f provides that registrations shall expire on the 31st day of December of the year for which issued, and shall be renewed on application unless the registration has been suspended or revoked as prescribed by the act. Section 4g provides that such registration may be revoked for violation of any of the provisions of the act or any of the rules or regulations of the Secretary of Agriculture.

Plaintiffs contend that these are licensing provisions and that the federal government has not the right under any circumstances to forbid the citizen of a state to engage in intrastate commerce. We have already observed that the act purports to deal with and regulate interstate commerce. The business regulated is affected with a "national public interest." Board of Trade of City of Chicago v. Olsen, supra. In that case, regulation of a contract market by forbidding it from excluding from membership in and all privileges on its exchanges, any duly authorized representative of a lawfully formed and conducted association of producers was upheld as a reasonable regulation in the public interest. Upon the same grounds these sections must be sustained.

■ Section 5a (7) of the act (7 U.S.C.A. § 7a (7) provides that cash contract markets shall "require that receipts issued under the United States Warehouse Act (U.S.C., 1934 ed., title 7, Secs. 241–273) [sections 241 to 273 of this title], shall be accepted in satisfaction of any futures contract, made on or subject to the rules of such contract market, without discrimination and notwithstanding that the warehouseman issuing such receipts is not also licensed as a warehouseman under the laws of any State or enjoys other or different privileges than under State law: Provided, however, That such receipts shall be for the kind, quality, and quantity of commodity specified in such contract and that the warehouse in which the commodity is stored meets such reasonable requirements as may be imposed by such contract market on other warehouses as to location, accessibility, and suitability for warehousing and delivery purposes."

It is not alleged in plaintiffs' bill of complaint that there are any federal warehouses in the vicinity. It is not alleged that anything has been done by any of the defendants pursuant to this provision of the act, and nothing is threatened to be done. In such circumstances we must decline to consider the question urged. Utah Power & Light Co. v. Pfost, 286 U.S. 165, 52 S.Ct. 548, 76 L.Ed. 1038; United States Nat. Bank v. Pamp (C.C.A.8) 77 F.(2d) 9, 99 A.L.R. 1370.

Section 4a (1) of the act (7 U.S.C. A. § 6a (1) provides that for the "purpose of diminishing, eliminating, or preventing such burden, the commission shall, from time to time, after due notice and opportunity for hearing, by order, proclaim and fix such limits on the amount of trading under contracts of sale of such commodity for future delivery on or subject to the rules of any contract market which may be done by any person as the commission finds is necessary to diminish, eliminate, or prevent such burden. Nothing in this section shall be construed to prohibit the commission from fixing different trading limits for different commodities, markets, futures, or delivery months, or different trading limits for buying and selling operations, or different limits for the purposes of subparagraphs (A) and (B) of this section, or from exempting transactions commonly known to the trade as 'spreads' or 'straddles' or from fixing trading limits applying to such transactions different from trading limits fixed for other transactions."

This provision is assailed on the ground that it is a delegation of legislative power to the Commission, in violation of section 1, article 1, of the Constitution. The determination of the Commission as to what constitutes "excessive speculation," "sudden or unreasonable fluctuations," "unwarranted" changes in prices, the limits "necessary" to diminish, eliminate, or prevent the alleged burden, it is argued, is the exercise of an unlimited power.

Confessedly, no order has yet been made by the Commission, and there may never be any ground for complaint with reference to the exercise of the power so vested in the Commission, and, hence, the attack would seem to be premature. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688. There are limits to the power of delegation of authority. Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446; Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947.

Plaintiffs cite Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322, and Champlin Refining Co. v. Commission, 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062, 86 A.L.R. 403, as supporting their contention with reference to this provision; but these cases are to be distinguished because the statute creating a penal offense was vague. Here there is authority to make certain, and as a rule greater precision is required of statutes defining and punishing crimes than of statutes delegating legislative power to executive boards and officers. Mahler v. Eby, 264 U.S. 32, 44 S.Ct. 283, 68 L.Ed. 549.

The statute considered in Schechter Poultry Corp. v. United States, supra, the court in effect held, conferred authority to write a complete statute, and the same is true of the statute considered in Panama Refining Company v. Ryan, supra. But the statute in the instant case consists of a general rule to be applied as facts and conditions may require. A policy or standard is laid down, while the selected instrumentality is given power and vested with the duty to make subordinate rules within these prescribed limits. The order of the Commission is to be made only "after due notice and opportunity for hearing." With such a safeguard against arbitrary action, it will not be presumed in advance of the making of an order that the Commission will violate any rights. There is a presumption that public officers will not only do their duty, but that they will perform such duties faithfully. If and when orders shall have been made, it will be time enough to consider them with a view of determining whether they violate any constitutional rights.

The punishment or fine imposed (section 9 [7 U.S.C.A. § 13]) for violation of sections 4, 4a, 4b, 4c, 4d, 4e, 4h, and 4i of the act (7 U.S.C.A. §§ 6, 6a to 6e, 6h, 6i) are assailed by plaintiffs, but the argument is bottomed on the premise that they are invalid, but, as we have concluded that they are not invalid, it seems quite unnecessary to give separate consideration to this contention.

It remains to consider the allegations of the bill with reference to the alleged acts of certain of the defendants in connection with the attempted enforcement of section 4c (B) of the act (7 U.S. C.A. § 6c (B). This part of the statute has already been set out in this opinion. It is alleged in the bill of complaint that the defendant United States District Attorney and the defendant Commodity Exchange Supervisor, and each of them, "threaten to, and will, cause criminal prosecutions to be instituted against Uhlmann Grain Company, and other members of the

Board of Trade and firms represented thereon and their customers, for alleged violation of the provisions of said subdivision (B) of said section 4c, in making, handling and confirming transactions on grain exchanges situated in foreign countries, for the purchase or sale of 'privileges,' and will, unless restrained by this court, cause such firms and persons to be convicted, fined and imprisoned therefor. * * * That such transactions upon foreign exchanges are made and handled by plaintiffs and members of the Board of Trade and firms represented thereon by transmitting orders or offers to members of an exchange situated in foreign countries and such transactions are made and executed on such foreign exchange and wholly in such foreign country by the making of a 'privilege' contract with some other member of such foreign exchange; in event the options covered by such contracts are exercised, there is first delivered thereon a contract for purchase or sale of grain for future delivery on and at such exchange in such foreign country; and in event any grain is delivered upon such contract for future delivery, such grain is delivered at such exchange in said foreign country; that neither said contracts in the nature of 'privileges,' nor contracts for purchase or sale of grain for future delivery executed in consummation thereof, provide for, require, contemplate or are made with the intention of, transportation of any grain from such foreign country into the United States or from the United States into such foreign country, or transportation in interstate commerce; and all deliveries of actual grain made in final consummation of such transactions are in each instance made by delivery of warehouse receipts covering grain located in warehouses at such foreign market, and such contracts by their express terms require such form and manner of delivery. That no such transaction is made, entered into, confirmed or offered to be entered into upon the Board of Trade or the exchange floor, nor are such transactions made subject to the constitution or rules of the Board of Trade with reference thereto. * * * Plaintiffs further say that said provisions of said Act as so construed and enforced and threatened to be enforced by the Secretary of Agriculture violate the said constitutional provisions aforesaid."

It is also alleged that many members of the Board of Trade and firms representing such members, including the plaintiff Uhlmann Grain Company, have for many years carried on a profitable business in making and handling such transactions on foreign markets, and have derived commissions therefrom amounting to many thousands of dollars in each year; that such members have been compelled to discontinue this practice because of the threatened criminal prosecutions; and that they have by reason of such threats been deprived of their property in violation of the provisions of the Constitution of the United States.

It is first to be observed that while it is alleged in the bill that these transactions on foreign exchanges do not contemplate or involve the transportation of any grain from a foreign country into the United States, nor from the United States into a foreign country, nor transportation in interstate commerce, this provision of the act makes it unlawful "to offer to enter into, enter into, or confirm the execution of, any transaction involving any commodity, which is or may be used for (1) hedging any transaction in interstate commerce in such commodity or the products or by-products thereof, or (2) determining the price basis of any such transaction in interstate commerce in such commodity, * * *; (B) if such transaction is, is of the character of, or is commonly known to the trade as, a 'privilege,' etc."

The bill does not allege that these transactions do not or may not be used for hedging a transaction in interstate commerce, nor for determining the price basis of a transaction in interstate commerce in the commodity involved. Having failed to so allege, the bill falls short of that definiteness and completeness of allegation necessary where it is sought to enjoin criminal prosecution. To justify enjoining criminal proceedings there must be special circumstances and a clear showing of threatened invasion of property rights resulting in irreparable injury, and it must appear that "the danger of irreparable loss is both great and immediate." Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 681, 79 L.Ed. 1322; Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L. Ed. 927; Jacob Hoffman Brewing Co. v. McElligott (C.C.A.2) 259 F. 525; Arbuckle v. Blackburn (C.C.A.6) 113 F. 616, 65 L.

R.A. 864; P. E. Harris & Co. v. O'Malley (C.C.A.9) 2 F.(2d) 810.

It follows that the lower court did not err in dismissing the bill of complaint, and the decree appealed from is therefore affirmed.