In the Matter of the Application of the NORTHWESTERN NATIONAL INSURANCE COMPANY, Petitioner, Appellant, for an Order to Review the Determination of LOUIS H. PINK, Superintendent of Insurance, Respondent.

First Department, June 27, 1941.

*Frederick T. Case*, for the petitioner.

*William J. Cahill, Assistant Attorney General,* of counsel [*James S. Regan, Assistant Attorney-General,* with him on the brief; *John .J. Bennett, Jr., Attorney-General*], for the respondent.

GLENNON, J. This proceeding was instituted pursuant to the provisions of article 78 of the Civil Practice Act, to review a determination of the Superintendent of Insurance wherein he denied an application to renew petitioner's license to do business in the State of New York.

The petitioner, Northwestern National Insurance Company, was organized under the laws of the State of Wisconsin. It has been engaged in the fire insurance business in this State since 1872.

A prior proceeding was instituted to question the propriety of a provisional license which was granted to the petitioner in 1939, but this court dismissed the proceedings upon the ground that it had become academic by virtue of the fact that the certificate of authority under which the petitioner was authorized to do business within this State had expired on April 30, 1940 (261 App. Div. 944). In that proceeding, as well as in this, the petitioner was charged with paying excess commissions to certain fire insurance brokers in the city of New York for procuring business. The conditional renewal of the 1939 license provided in substance that in the event the petitioner did not discontinue the payment of the so-called excess commissions within sixty days, its certificate of authority for the year beginning April 30, 1939, and ending April 30, 1940, would be revoked. Because of the delay in presenting the question to this court, the full period of time for which the license was issued had terminated, and as a consequence this court disposed of the application to review in the manner outlined.

The Superintendent of Insurance has refused to renew the petitioner's license for the year beginning April 30, 1940. It is stated in the petition, and not denied, that in contemplation of this litigation the petitioner has obtained a court order with the consent of the Superintendent of Insurance and the Attorney-General of the State of New York, permitting the petitioner to continue its business in this State pending the determination of this litigation.

The right to review the action of the Superintendent of Insurance in refusing to issue a renewal of a license is provided for in subdivision 7 of section 40 of the Insurance Law.

The only charge made against the petitioner is its refusal to discontinue the payment of the so-called excess commissions to brokers. In fact upon the hearing pertaining to the subject-matter of this controversy, the Superintendent stated: " I might as well state we have no fault to find with the Northwestern in so far as

its financial strength goes, or in so far as its practices go, excepting in this particular matter. There is no question about that." Further he said: " The company itself is financially sound and no question is raised except with regard to its practice of paying excess commissions."

Ninety-eight per centum of the insurance companies in the State of New York are members of a voluntary association known as the New York Fire Insurance Exchange. The petitioner was a member of that body until upwards of ten years ago when it resigned. The members of the Exchange, among other things, fix the schedules of commissions which are to be paid to brokers. What the petitioner has done, in effect, is to pay commissions to its insurance brokers which are higher than those paid by the members of the New York Fire Insurance Exchange.

The rates of commissions which insurance brokers may earn for their labors are not fixed by the Insurance Law. It does not appear that the Superintendent of Insurance has issued a ruling that any particular rate or set of rates must be observed by all insurance companies. It seems to us that in view of the failure of the Legislature to give the Superintendent the power to regulate or limit the rate of commissions to be paid to brokers, he had no authority in law to refuse to renew the petitioner's application for a license on the ground that it pays larger commissions to insurance brokers than do the members of the New York Fire Insurance Exchange.

That the Legislature has granted no direct authority to the Insurance Department over the rates of commissions to be paid to insurance brokers, is apparent from the statement of the Superintendent of Insurance which is found in the record as follows: " I believe and have frequently stated that eventually it will probably be necessary for the Legislature to give the Department some direct control over commissions for the proper policing of the business. This demand will eventually come from the industry itself. I have also stated and again repeat that in view of the fact that the Legislature has not given such direct control to the Department I do not wish to fix commissions or to assume any authority not fairly intended by the statute * * *."

While the Superintendent of Insurance stated that he did not wish to fix commissions or to assume any authority not fairly intended by the statute, his refusal to renew the license in this case upon the ground that the petitioner pays excess commissions to its brokers, has the result of placing his stamp of approval upon the schedules of commissions which were fixed by the New York Fire Insurance Exchange. In other words, it seems to us that he has done something indirectly which he concededly has not the power to do directly.

In his letter of refusal, which was annexed to the petition, the Superintendent said, in part: " In my judgment such a refusal will best promote the interests of the people of this State." It is hard to understand how the interests of the people will be affected by the payment of the so-called excess commissions to the petitioner's brokers. This company, the petitioner herein, charges the same rates of premiums as do other companies. As we have seen, the Superintendent certified that it is sound financially. The business it seeks apparently is what is known as preferred risks. If its business enables it to pay larger commissions to its brokers and still continue on a sound financial basis, there is no reason for refusing to renew the license on the ground that the interests of the people of the State will best be promoted.

We are constrained to the view that the determination of the Superintendent of Insurance should, upon the facts which were presented to us, be annulled, with fifty dollars costs and disbursements to the petitioner.

TOWNLEY and DORE, JJ., concur; MARTIN, P. J., and CALLAHAN, J., dissent.

CALLAHAN, J. (dissenting). An insurer's license is essential to authorize any domestic or foreign insurance company to do business in this State. The Superintendent of Insurance is authorized to refuse to issue or renew any license, if, in his judgment, such action will best promote the interests of the People of the State. (Insurance Law, § 40.) A foreign insurer is permitted to receive a license if the Superintendent is satisfied by such proof as he may require that the insurer is not delinquent with respect to any requirement of the Insurance Law, and that its continuation in business in this State will not be hazardous or prejudicial to the best interests of the People of the State of New York.

The business of insurance is clothed with public interest and is subject to the police power of the State. (*German Alliance Ins. Co.* v. *Lewis*, 233 U. S. 389.) Accordingly, a State statute limiting commissions to be paid to insurance brokers is deemed a valid exercise of the police power, unless unreasonable. (*O'Gorman and Young, Inc.*, v. *Hartford Fire Ins. Co.*, 282 U. S. 251.) To the extent that the Legislature may regulate by specific act, it may within constitutional limitations direct an administrative officer to regulate. Such direction may be general or specific. The Legislature has in general terms invested the Superintendent with power to do those things necessary to promote the best interests of the State by eliminating hazardous and prejudicial practices in the insurance field. This, of course, means that there must be a

reasonable basis for the decision that hazards are involved. The burden is on the one asserting unreasonableness to establish that fact. (*La Tourette* v. *McMaster*, 248 U. S. 465.)

Before issuing a license the Superintendent of Insurance is authorized to make an examination of the affairs of an insurer. (Insurance Law, § 42.) An examination made pursuant to that authority disclosed that petitioner, a foreign insurance company, in addition to paying regular commissions of $55,466.48 during a particular period, on a business involving $305,406.69, had allowed an additional ten per centum in cash to brokers. These payments had not been disclosed on the company's books. It is the payment of this excess commission that caused the Superintendent to refuse petitioner its license. Petitioner says that the Superintendent is not specifically authorized by law to limit the commissions to be paid brokers. We think that the power to do so is implied in the general powers conferred.

It appears that ninety-eight per centum of the companies doing business in this State do not allow any excess commission to brokers. The Superintendent has found as a fact that payment of excess commissions is an evil which reacts disadvantageously to the policyholders, companies and producers. He states that he had no desire to fix commissions. He considers excess commissions those sums paid in cash over and above the amounts agreed on by the bulk of the industry. It is not beyond the realm of reason that excessive competition in some matters relating to the insurance business leads to prejudicial results. The Superintendent claims that if one company is permitted to pay excess commission, others must follow suit. He has further found that regulation of rates is a well-defined policy in the State of New York, and that reasonable standardization of commissions is a necessary part of rate regulation. Accordingly, he gave petitioner an opportunity to desist from allowing excess commissions. It has refused to do so, and has brought on this litigation. In his formal findings the Superintendent stated that the payment of excess commissions has been found an abuse in the fire insurance business in the light of past experience.

We think that under the circumstances indicated the refusal to issue a license was warranted and within the powers conferred by law on the Superintendent, for there was a reasonable basis for the decision that hazards are involved which made the payments of excess commissions prejudicial to the best interests of the People of the State of New York.

MARTIN, P. J., concurs.

Determination annulled, with fifty dollars costs and disbursements to the petitioner. Settle order on notice.